PEOPLE v HOAG

Docket No. 78-2770. Submitted November 7, 1978, at Lansing.—Decided April 17, 1979. Leave to appeal applied for.

Alonzo E. Hoag, a former sheriff and undersheriff of Eaton County, was charged with separate counts of obstruction of justice, perjury in a capital case and wilful neglect of duty as the result of an indictment entered by a citizen's grand jury formed to investigate police misconduct in a murder prosecution. The cause of the grand jury indictment stems from the prosecution of Richard Morris for the murder of Gary Herrero. Morris's first trial ended in a conviction which the Court of Appeals reversed in an unpublished per curiam opinion (Docket No. 14273, issued on December 4, 1974). Subsequently, a three-judge panel dismissed the Morris prosecution because of alleged police misconduct. The Court of Appeals affirmed the dismissal, 77 Mich App 561; 258 NW2d 559 (1977) and the Supreme Court denied leave, 402 Mich 844 (1977). Present defendant Hoag was not a party to those proceedings, nor was he represented by counsel. The people had intended to prosecute all three counts in a single trial. Defendant claimed that a single trial on all three counts would deprive him of a fair trial and moved to sever Count I from the remaining counts. The motion was granted, Eaton Circuit Court, Paul R. Mahinske, J. During the subsequent trial on Count I, the prosecutor asked for a mistrial based upon certain evidentiary rulings by the trial court and when defendant refused to consent to the mistrial, the prosecutor moved to dismiss Count I and the jury was

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law §§ 165, 166, 209, 476.

[2] 21 Am Jur 2d, Criminal Law §§ 442-451.

[3] 60 Am Jur 2d, Perjury §§ 4-12.
   Materiality of testimony assigned as perjury as question for court or jury. 62 ALR2d 1027.
   Statement of belief or opinion as perjury. 66 ALR2d 791.

[4] 60 Am Jur 2d, Perjury §§ 11, 12.
   Materiality of testimony assigned as perjury as question for court or jury. 62 ALR2d 1027.

[5] 60 Am Jur 2d, Perjury §§ 59, 60.

discharged. Defendant joined in the motion to dismiss. The Court of Appeals rejected the prosecutor's attempt to appeal the evidentiary questions on double jeopardy grounds. When the Court of Appeals denied the prosecutor's appeal, following the dismissal of Count I, defendant moved to dismiss Counts II and III on the basis of double jeopardy. The circuit court found that further prosecution on Counts II and III was barred by double jeopardy. The net effect of the trial court orders was to prevent further prosecution of defendant for any alleged misconduct while he held the positions of sheriff and undersheriff of Eaton County. The people appeal seeking review of the orders entered by the circuit court. The questions on appeal are whether defendant waived his right to a single trial by seeking severance, whether the examining magistrate erred in his findings regarding materiality, falsity and wilfulness in determining that perjury was an issue of fact for a jury rather than a nonjury question of law, and whether a news reporter who refused to name the source of information he had used in formulating questions put to defendant in his capacity of having been a witness in the Morris trial could be barred from testifying in the subsequent trial of defendant for perjury and misconduct in office. *Held:*

1. A defendant waives his double jeopardy rights when he seeks severance or opposes consolidation of charges; where a defendant has done everything he can to avoid having all charges tried in a single proceeding, a second trial is not barred because of double jeopardy.

2. A trial court should not substitute its judgment for that of a magistrate unless the evidence is totally wanting on a material point. A review of the record discloses sufficient evidence to support the magistrate's findings of falsity and wilfulness in binding Hoag over for trial on Count II, perjury in a capital case. The trial court erred by substituting its view of the evidence for that of the examining magistrate and in dismissing Count II.

3. The news reporter should be allowed to testify in Hoag's trial for perjury and misconduct in office. The source of information which prompted questions of the defendant regarding his testimony in the Morris trial was not relevant or material to the questions to be asked in the Hoag trial, had no relation to any fact in issue and did not affect the reporter's credibility.

Reversed and remanded.

1. CRIMINAL LAW — DOUBLE JEOPARDY — WAIVER.
Double jeopardy rights may be waived by a defendant who seeks

severance or opposes consolidation of charges and the fact that a prior trial which has been severed ended in dismissal does not affect a waiver of double jeopardy rights which preceded it; a defendant waives his double jeopardy rights and double jeopardy rights should not bar a second trial where he has done everything he can to avoid having all charges against him tried in a single proceeding.

2. CRIMINAL LAW — MAGISTRATES — PRELIMINARY EXAMINATION — PROBABLE CAUSE — EVIDENCE — DISCRETION.

Abuse of the magistrate's discretion is the standard to be applied by a trial court in determining whether probable cause was established by sufficient evidence at a preliminary examination and a trial court should not substitute its judgment for that of a magistrate unless the evidence is totally wanting on a material point.

3. PERJURY — ELEMENTS — STATUTES.

Three things are necessary to constitute perjury: (1) administration to the respondent of an oath authorized by law, by competent authority, (2) an issue or cause to which facts sworn to are material, and (3) wilful false statements or testimony by the respondent regarding such facts (MCL 750.423; MSA 28.665).

4. PERJURY — WITNESSES — STATEMENTS — CREDIBILITY.

A statement is usually held to be material and sufficient to support a prosecution for perjury if it is calculated to support or attack the credibility of the witness.

5. EVIDENCE — NEWS REPORTERS — SOURCE OF INFORMATION — PERJURY — RELEVANCY — MATERIALITY — REPORTER'S CREDIBILITY — ADMISSIBILITY.

A news reporter's refusal to name the source of certain information he had used in formulating questions put to a party who was a witness in a prior trial of another defendant does not make such questions and testimony inadmissible in a subsequent prosecution of the witness for perjury where the source of the information was not relevant or material to the questions asked, had no relation to any fact at issue and did not affect the reporter's credibility.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Joseph D. Reid,* Special Prosecuting Attorney, and *Lawrence J.*

*Emery,* Assistant Special Prosecutor, for the people.

*Abood & Abood, P.C.,* and *Michael K. Hegarty,* for defendant.

Before: D. F. Walsh, P.J., and T. M. Burns and D. E. Holbrook, Jr., JJ.

T. M. Burns, J. The special prosecutor brings this appeal to review three orders entered by the circuit court on May 26, 1978. The net effect of these orders was to prevent further prosecution of defendant, a former sheriff and undersheriff of Eaton County, for any alleged misconduct while he held those positions.

A citizens grand jury formed to investigate police misconduct in a murder prosecution[1] returned a nine-count indictment against defendant. At the preliminary examination, defendant was bound over for trial on three counts. The amended information, set forth as an appendix to this opinion, charged defendant with one count of obstruction of justice, MCL 750.505; MSA 28.773, one count of perjury in a "capital" case, MCL 750.422; MSA 28.664, and one count of wilful neglect of duty, MCL 750.478; MSA 28.746.

It would be of little value to detail the many motions, at least 22, and attempted appeals which

---

[1] Richard Morris was prosecuted for the murder of Gary Herrero. The first trial ended in a conviction which this Court reversed in an unpublished per curiam opinion (Docket No. 14273, issued on December 4, 1974). The retrial of Morris ended in a mistrial. Subsequently, a three-judge panel dismissed the Morris prosecution because of alleged police misconduct. This Court affirmed the dismissal, *People v Morris,* 77 Mich App 561; 258 NW2d 559 (1977), and the Supreme Court denied leave. 402 Mich 844 (1977).

Defendant Hoag was not a party to those proceedings, nor was he represented by counsel. The factual findings of the circuit panel, which this Court affirmed on appeal, are, therefore, not binding in this prosecution.

have preceded our 'consideration of this case. It is sufficient to outline the action below which precipitated this appeal. One of the orders entered on May 26 dismissed Counts II and III of the information on double jeopardy grounds. Defendant's double jeopardy claim arose from the following sequence of events.

The people intended to prosecute all three counts in the single trial. Claiming the acts upon which Count I were based were not part of the same transaction[2] as those described in Counts II and III and that a single trial on all three counts would deprive him of a fair trial, defendant moved to sever the trial on Count I from the remaining counts. After extended, and at times heated argument, the motion was granted. Further argument was heard, at which point the trial court stated:

"The defendant in this particular case had made a motion, that I have just ruled on, to sever and in the arguments for the granting of such motion has indicated that he doesn't like the position he places himself in because the prosecutor, to put it bluntly, gets more than one crack at it; and that it seems to me, and my ruling is, that the defendant, by making the motion, well knowing what jeopardy he may be putting himself into, or inconvenience he may be putting himself into, has waived any defense, if it is waiveable, of collateral estoppel."

After the prosecutor's efforts to rejoin the three counts were rejected the parties proceeded to trial on Count I. Because of certain evidentiary rulings by the trial court, but before the people's case had been completed, the prosecutor asked for a mistrial. When defendant refused to consent to the mistrial, the prosecutor moved to dismiss Count I

---

[2] Defendant takes the opposite view in this appeal.

and the jury was discharged. Defendant joined in the motion to dismiss. The prosecutor's attempt to appeal the evidentiary questions to this Court after the dismissal of Count I was rejected on double jeopardy grounds. When this Court denied the prosecutor's appeal following the dismissal of Count I, defendant moved to dismiss Counts II and III on the basis of double jeopardy. In an apparent reversal of its previous position, the circuit court found that further prosecution on Counts II and III was barred by the double jeopardy clause.

The problem raised by these facts involves the double jeopardy bar against successive prosecutions. We assume, without deciding, the trial on all three counts should have been had in a single proceeding under the rule of *People v White,* 390 Mich 245; 212 NW2d 222 (1973). But, that is not the issue here. Our question is whether defendant waived his right to a single trial by seeking severance.[3] We conclude that he did.

The double jeopardy problem was specifically raised at the time severance was granted. The trial court at that time indicated defendant was waiving the right. The fact that the first trial ended in a dismissal does not effect the waiver which had preceded it. This conclusion can be inferred from prior decisions of this Court. See, *People v Fick,* 45 Mich App 435; 206 NW2d 739 (1973), *People v Galdoni,* 81 Mich App 606; 266 NW2d 47 (1978). Other courts have found a waiver of double jeopardy rights when the defendant seeks severance or opposes consolidation. *In the Matter of ALS,* 377 A2d 1149 (DC App, 1977), *State v Brissette,* 31 Or App 1243; 572 P2d 1068 (1977), *Commonwealth v Holmes,* 480 Pa 536; 391

---

[3] The *White* majority specifically stated that the rule adopted did not affect the law relating to a defendant's request for the severance of related offenses. 390 Mich at 258, fn 8.

A2d 1015 (1978). In a case such as this, where defendant has done everything he can to avoid having all offenses tried in a single proceeding, we cannot hold that the double jeopardy clause bars a second trial. *Cf. Jeffers v United States,* 432 US 137, 152; 97 S Ct 2207; 53 L Ed 2d 168 (1977) (opinion of Blackmun, J.). The right has been waived.

As an alternative basis for dismissing Count II, the perjury count, the trial court held that the question and answer upon which that count was based could not constitute perjury as a matter of law. In effect, the trial court ruled that the examining magistrate erred in his findings regarding materiality, falsity and wilfulness.

The standard to be applied by a trial court in determining whether probable cause was established by sufficient evidence at the preliminary exam is the abuse of discretion standard. The trial court is not to substitute its judgment for that of the magistrate unless the evidence is totally wanting on a material point. *People v Gould,* 61 Mich App 614; 233 NW2d 109 (1975).

Perjury is defined in the statute as:

"Any person authorized by any statute of this state to take an oath, or any person of whom an oath shall be required by law, who shall wilfully swear falsely, in regard to any matter or thing, respecting which such oath is authorized or required, shall be guilty of perjury, * * *". MCL 750.423; MSA 28.665.

"In order to constitute perjury under the statute, three things are necessary:

"First: Administration to the respondent of an oath authorized by law, by competent authority;

"Second: An issue or cause to which facts sworn to are material, and;

"Third: Wilful false statements or testimony by the

respondent regarding such facts." 4 Gillespie, Michigan
Criminal Law & Procedure (2d ed), § 2000, p 2281.

The specific question and answer upon which the
perjury count is based is set forth in the footnote
along with several questions preceding and follow-
ing it.[4] This testimony was given by Hoag at the
second Morris trial during cross-examination by
Morris's attorney. Hoag had previously admitted
meeting with the prosecutor prior to this second
trial. There is no question that the magistrate had
sufficient evidence to find that Hoag was under
oath and that the oath was properly administered.
The problem lies with the other elements of the
offense.

We have concluded that the question and an-
swer were material to an issue being tried in the
Morris case. The origin of the blanket, whether it
was found in Morris's car by the Michigan State
Police or had been placed there by Hoag, was a
crucial fact. If the blanket could be tied to Morris
or his car, it was a vital piece of evidence in the
people's case. By his cross-examination, Morris's
attorney was trying to prove that Hoag had placed

---

[4] "Q. Well, did you remind him and say, How about going over the
matter of the car?

"A. No.

"Q. You didn't mention that?

"A. No.

"Q. *Now did you make any mention, or mention or discuss ques-
tions of this blanket?*

"A. *No.*

"Q. Not at all?

"A. No.

"Q. No question came up about whether you used a blanket or not
to examine the car?

"A. No.

"Q. I'm assuming when you say No, without any hesitancy, you
mean, No. It's not, you don't remember or you are not certain, it
means No?

"A. Yes."

the blanket in Morris's car and that he had discussed that fact with the prosecutor only a short time before the second trial. At the very least, the question was material to Hoag's credibility. Credibility is a sufficiently material issue to support a prosecution for perjury. See, 60 Am Jur 2d, Perjury, § 11, p 973.

We turn next to the magistrate's finding of falsity. Accepting for the moment that a "literal truth", even if unresponsive, cannot support a perjury prosecution under our statute, *Bronston v United States,* 409 US 352; 93 S Ct 595; 34 L Ed 2d 568 (1973) (construing the Federal perjury statute), that concept has no application here. The *Bronston* holding is limited to answers which are indisputably true. It is improper to accept, as a matter of law, that an answer is arguably true under a defendant's interpretation of the question. See, *United States v Haldeman,* 181 US App DC 254; 559 F2d 31 (1976). Under the facts presented to the magistrate, whether the statement was false is a question of fact to be resolved by the trier of fact. There was sufficient indication of falsity to bind defendant over for trial.

The question of wilfulness may be resolved in the same manner. If the answer was not intentionally false, the jury must acquit. But, where there is some question as to what the defendant meant by his answer or some question as to how he interpreted the question, the issue is for the jury. *People v German,* 110 Mich 244; 68 NW 150 (1896). The evidence before the magistrate, including the testimony quoted in footnote 4, was sufficient to support a finding of wilfulness and to show that defendant did not have a problem interpreting the question.[5]

---

[5] The other evidence shows that the blanket was mentioned or

The trial court erred by substituting its view of the evidence for that of the examining magistrate and in dismissing Count II of the information on the evidence there presented.

The final issue comes to us in a most unusual way. During the trial on Count I the Court struck the testimony of Ray James, a reporter who had questioned Hoag shortly after he, Hoag, had testified in the second Morris trial. The basis of the action was James's refusal to name the source of certain information he had used in formulating questions put to Hoag. The information consisted of quotes from Hoag's testimony at the Morris trial. James had asked Hoag if he had testified in that way and if that testimony was true. The trial court entered an order on May 26, 1978, stating that it would treat Mr. James's testimony in exactly the same manner in any subsequent trial or trials ordered by this Court. In effect, the court held that if James did not reveal who gave him Hoag's testimony in the Morris trial he could not testify in the perjury prosecution.

We do not perceive this problem as involving the scope of the reporter's privilege to protect confidential sources under MCL 767.5a; MSA 28.945(1). As we see it, the question is whether the source of the information used by James to formulate his questions was relevant or material. Stated another way, was it a proper topic of inquiry? Under the circumstances of this case we hold that it is not. James testified that Hoag admitted that he testified as James suggested he had. Thus, where James got his information is not material. It has no relation to any fact at issue. We fail to see how

discussed at Hoag's meeting with the prosecutor. It also showed that Hoag told others he intentionally gave defense counsel misleading answers during the second Morris trial.

revealing the source could affect James's credibility.

Subject to the other rules of evidence, James's testimony is admissible and should not be excluded solely because he does not reveal who supplied him information which later became the basis of questions to Hoag and was a matter of public record.[6]

Reversed and remanded for further proceedings.

APPENDIX

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY
OF EATON

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff,                                    AMENDED INFORMATION
vs.                                           File No. 76-214-FY

ALONZO EUGENE HOAG,
       Defendant.

_____/

STATE OF MICHIGAN    )
                     )  ss.
COUNTY OF EATON      )

IN THE NAME OF THE PEOPLE OF THE STATE OF MICHIGAN, Now comes the Special Prosecutor in and for the said County, State of Michigan, who prosecutes for and on behalf of the People of the State of Michigan, in said Court in the current term thereof, and gives the said Court to understand and be informed that the above-named Defendant heretofore on or about the date of offense set forth at the LOCATION set forth, in the said County of Eaton, State of Michigan.

---

[6] The testimony of William DeGraaf should be treated in the same manner.

## Count I

That on or about the twenty-third day of June, 1971, and continuing to the ninth day of January, 1976, A. Eugene Hoag, being obligated by oath and by law to investigate, report and disclose the results of his investigation into the death of one Gary Herrero did, in breach of said duty, willfully and deliberately suppress, conceal, and distort facts known to him concerning said investigation, to-wit:

A. Failing to inform State Police Investigators conducting a search of the vehicle of Richard Morris, then a suspect in the murder of Gary Herrero, that there was no blanket in said vehicle at the time the vehicle was first searched and seized by A. Eugene Hoag.

B. Failing to itemize on the return of the executed search warrant, the seizure of a blanket.

C. Failing to disclose to the prosecution that the blood stained blanket, offered and introduced as Plaintiff's Exhibit, during the Preliminary Examination of the accused Richard Morris, was not located in the vehicle of Richard Morris when it was first secured and searched by A. Eugene Hoag.

D. Failing to disclose to the prosecution that the aforementioned blood stained blanket was false evidence against the accused, Richard Morris, contrary to the laboratory analysis reports from the Michigan State Police submitted on or after August 6, 1971.

E. Failing to disclose during his testimony at the time of the first trial of Richard Morris, that the blood stained blanket was false evidence against the accused, Richard Morris.

F. Failing to disclose to the prosecution at a meeting on December 19, 1975, in the offices of the Eaton County Prosecutor that the aforementioned blood stained blanket was false evidence against the accused, Richard Morris.

G. Failing to disclose to the jury during his testimony at the second trial of Richard Morris on or about

January 6, 1976, that the aforementioned blood stained blanket was discussed at the meeting conducted on December 19, 1975.

H. Intentionally misleading both defense counsel and the jury during his testimony at the second trial of Richard Morris on or about January 6, 1976, regarding a discussion as to the origin of the blanket as an Exhibit, said discussion having occurred at the offices of the Eaton County Prosecutor on December 19, 1975.

And that in each of the aforementioned acts or omissions A. Eugene Hoag did obstruct justice, willfully distorting and impeding the administration of the criminal law contrary to (MCLA 750.505; MSA 28.773) (Maximum penalty—five years imprisonment).

## COUNT II

On or about the sixth day of January, A.D., 1976, A. Eugene Hoag, upon his oath, before the Honorable Richard Robinson, Eaton County Circuit Court Judge in the trial of the *People of the State of Michigan v Richard Morris,* No. 112-71C, on the charge of murder in the second degree, a capital crime, did falsely swear, in that he stated and answered "No" to the following question asked him: "Now did you make any mention, or mention or discuss questions of this blanket?", whereas in truth and in fact the said A. Eugene Hoag on or about the nineteenth day of December, 1975, did discuss with Paul Berger, in the presence of Larry Hamilton, the origin of the blanket and the intended testimony of A. Eugene Hoag regarding said blanket, that said statements being made at the office of the Eaton County Prosecutor, located in the City of Charlotte, Eaton County, Michigan, that the foregoing false statement was made willfully and corruptly and that the false

statement was material to the proceedings at which it was tendered. Contrary to P.A. 1931, No. 328, S 422 (MCLA 750.422; MSA 28.664) (Maximum penalty—life imprisonment).

## Count III

On or about the sixth day of January, A.D., 1976, A. Eugene Hoag, upon his oath before the Honorable Richard Robinson, Eaton County Circuit Judge in the trial of the *People of the State of Michigan v Richard Morris,* No. 112-71C, on the charge of murder in the second degree, a capital crime, did falsely swear, in that he stated and answered "No" to the following question asked him: "Now did you make any mention, or mention or discuss questions of this blanket?", whereas in truth and in fact the said A. Eugene Hoag on or about the nineteenth day of December, 1975, did discuss with Paul Berger, in the presence of Larry Hamilton the origin of the blanket and the intended testimony of A. Eugene Hoag regarding said blanket, that said statements being made at the office of the Eaton County Prosecutor, located in the City of Charlotte, Eaton County, Michigan, that the foregoing false statement was made willfully and corruptly in willful neglect of his duty as an officer sworn to uphold the law contrary to (MCLA 750.478; MSA 28.746) (Maximum penalty— one year and/or $500).

All of said conduct being against the peace and dignity of the People of the State of Michigan.

## Witnesses

William Degraaf; Helen Clegg; Ray James; Larry Hamilton; Frank Combs; James Kirkpatrick;

Dennis Armstrong; Robert Kowalski; Donald Schuiteman; Robert Deitrick; Donald Zimmer; Sharon Martin; Curtis Oglesby; Paul Berger; The Honorable Richard Robinson; Thomas Shirts; I. Goodman Cohen; Richard Bisbing; Joseph Krease; Elwin Smith; David Smith.

/s/ *Joseph D. Reid*
Joseph D. Reid
Special Prosecutor for Eaton County
Reid & Reid, P.C.
530 South Capitol Avenue
Lansing, Michigan 48933

/s/ *Lawrence J. Emery*
Lawrence J. Emery
Assistant Special Prosecutor for Eaton County
Reid & Reid, P.C.
530 South Capitol Avenue
Lansing, Michigan 48933

DATED: April 27, 1977