PEOPLE v HOAG

Docket No. 53704. Submitted November 10, 1981, at Lansing.—Decided March 3, 1982. Leave to appeal applied for.

Alonzo E. Hoag was convicted of perjury in the Eaton Circuit Court, Harvey W. Moes, J. The testimony alleged to constitute perjury was given during the trial of Richard Morris and at that time Hoag was the Eaton County Sheriff. Defendant appealed. *Held:*

1. During the Morris trial, defendant testified denying that he had discussed certain physical evidence with the prosecutor. That trial ended in a mistrial, after which the trial court held an in-chambers conference with the prosecutor, Morris's attorney and Hoag. This conference was recorded. Defendant alleges that the trial court erred in admitting a transcript of that conference into evidence because he had not been given *Miranda* warnings. It is required that *Miranda* warnings be given before questioning only where there has been such a restriction on a person's freedom as to render him "in custody". Defendant was not "in custody" at the time he made the statements.

2. The issue of the materiality of the testimony alleged to be perjury is an issue for the trial court to decide in a prosecution for perjury. The trial court did not err in taking that issue from the jury, or in finding that the Court of Appeals had held his statements to be material as a matter of law in a previous

REFERENCES FOR POINTS IN HEADNOTES

[1] 21A Am Jur 2d Criminal Law § 793.
What constitutes "custodial interrogation" within rule of Miranda v Arizona requiring that suspect be informed of his federal constitutional rights before custodial interrogation. 31 ALR3d 565.
[2] 60 Am Jur 2d, Perjury § 11.
[3] 5 Am Jur 2d, Appeal and Error § 744.
[4] 4 Am Jur 2d, Appeal and Error § 528.
[5] 75 Am Jur 2d, Trial § 1005 *et seq.*
[6] 29 Am Jur 2d, Evidence § 252.
[7, 9] 5 Am Jur 2d, Appeal and Error §§ 881, 883.
[8] 29 Am Jur 2d, Evidence §§ 723, 724.
[9] 29 Am Jur 2d, Evidence § 256.
41 Am Jur 2d, Indictments and Informations §§ 56, 60.

appeal, *People v Hoag,* 89 Mich App 611 (1979), and that that holding was the law of the case.

3. Defendant alleged possible communication between a prosecution witness and a juror. No record was made concerning this contact. Defendant submitted an *ex parte* affidavit in support of his contention. *Ex parte* affidavits, filed for the first time in an appellate brief, may not serve to enlarge the record on appeal. Furthermore, reversal of a defendant's conviction is not required where there was a conversation between a juror and one of the parties or a witness unless the defendant can demonstrate that some prejudice resulted from the conversation. This affidavit fails to indicate any actual prejudice.

4. The trial court did not err in refusing to admit a transcript of testimony taken at a previous trial because it was irrelevant. Relevant evidence is defined as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the case more probable or less probable than it would be without the evidence.

5. The trial court erred in holding that the judge at the Morris trial was not a res gestae witness. Persons present at the scene of a crime are presumed to be res gestae witnesses able to testify regarding their observations. However, a trial court may excuse the production of a res gestae witness if his testimony would be merely cumulative. The prosecutor at the Morris trial did testify. The judge's testimony would have been cumulative, and the failure to produce him does not merit reversal.

Affirmed.

1. CRIMINAL LAW — MIRANDA WARNINGS.

It is required that *Miranda* warnings be given before questioning only where there has been such a restriction on a person's freedom as to render him "in custody".

2. PERJURY — MATERIALITY OF TESTIMONY.

The issue of the materiality of the testimony alleged to be perjury is an issue for the trial court to decide in a prosecution for perjury.

3. TRIAL — LAW OF THE CASE.

A legal issue settled on one appeal may not be raised again in a subsequent appeal after proceedings held on remand to a lower court.

4. APPEAL — EX PARTE AFFIDAVITS — RECORD ON APPEAL.

Ex parte affidavits, filed for the first time in an appellate brief, may not serve to enlarge the record on appeal.

5. CRIMINAL LAW — CONVERSATION WITH JURORS.

Reversal of a defendant's conviction is not required where there was a conversation between a juror and one of the parties or a witness unless the defendant can demonstrate that some prejudice resulted from the conversation.

6. EVIDENCE — RELEVANT EVIDENCE.

Relevant evidence is defined as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the case more probable or less probable than it would be without the evidence.

7. EVIDENCE — RELEVANT EVIDENCE — APPEAL.

A trial judge has discretion in ruling on the relevancy of evidence and a decision made in the exercise of that discretion should not be reversed unless it is clearly erroneous and indicates an abuse of discretion.

8. WITNESSES — RES GESTAE WITNESSES.

Persons present at the scene of a crime are presumed to be res gestae witnesses able to testify regarding their observations.

9. WITNESSES — RES GESTAE WITNESSES — APPEAL.

A prosecutor has the duty to endorse and produce all res gestae witnesses; a trial court has the discretion to excuse the production of a res gestae witness if his testimony would be merely cumulative; the court's decision should not be reversed on appeal absent a demonstration of abuse of discretion.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Lawrence J. Emery,* Special Prosecuting Attorney, and *Stephen A. Stohl,* for the people.

*Smith & Maher,* for defendant.

Before: M. J. KELLY, P.J., and D. E. HOLBROOK, JR., and N. J. KAUFMAN, JJ.

M. J. KELLY, P.J. Alonzo Eugene Hoag was convicted by a jury of perjury, MCL 750.422; MSA

28.664. On September 18, 1980, he was sentenced to five years probation, with the first six months to be spent in the Eaton County Jail. Defendant was also ordered to spend 900 hours in public service work and to pay $4,000 in costs. Defendant appeals his conviction as of right, GCR 1963, 806.1.

Hoag's conviction arises out of an allegedly perjured statement he made during the murder trial of Richard Morris.[1] After Morris's prosecution was dismissed because of alleged police misconduct, the Eaton County Circuit Court appointed a special prosecutor to investigate any irregularities which might have occurred during the trial. On July 24, 1976, a citizen's grand jury returned a nine-count indictment against Hoag, including three counts each of obstruction of justice, MCL 750.505; MSA 28.773, perjury, and wilful neglect of duty, MCL 750.478; MSA 28.746.

At defendant's preliminary examination, the magistrate dismissed six of the nine counts in the indictment and bound Hoag over on one count each of obstruction of justice, perjury, and wilful neglect of duty. Prior to trial, defendant successfully moved to sever the three counts for trial, and the people elected to proceed to trial on the obstruction of justice charge first. The trial commenced on February 7, 1978, but before the people's case was complete, the special prosecutor

[1] Richard Morris was prosecuted for the murder of Gary Herrero. The first trial ended in a conviction which this Court reversed in an unpublished per curiam opinion (Docket No. 14273, issued on December 4, 1974). The retrial of Morris ended in a mistrial. Subsequently, a three-judge panel dismissed the Morris prosecution because of alleged police misconduct. This Court affirmed the dismissal, *People v Morris*, 77 Mich App 561; 258 NW2d 559 (1977), and the Supreme Court denied leave. 402 Mich 844 (1977).

Defendant Hoag was not a party to those proceedings, nor was he represented by counsel. The factual findings of the circuit panel, which this Court affirmed on appeal, are, therefore, not binding in this prosecution.

moved for a mistrial based upon several evidentiary rulings made by the court.. When his motion was denied, the prosecutor moved to dismiss Count I. Defendant joined the motion to dismiss which was granted. The prosecution's attempt to appeal the evidentiary questions to this Court was dismissed on double jeopardy grounds.

After the prosecution's appeal was dismissed, defendant moved the trial court to dismiss Count II for perjury and Count III for wilful neglect of duty, claiming double jeopardy. The trial court granted his motion and also stated that Count II did not constitute perjury as a matter of law. The trial court also ruled that the testimony of Ray James and William DeGraaf would be treated in the same manner as in the trial on the obstruction of justice charge. In that trial, the court had required James, a news reporter, to disclose the source of the information he had used in formulating questions put to defendant. When James refused, his testimony and the testimony of DeGraaf, his cameraman, were struck. This Court reversed the trial court's rulings on May 26, 1978. *People v Hoag,* 89 Mich App 611; 281 NW2d 137 (1979), *lv den* 407 Mich 851 (1979). Trial was then scheduled on Count II of the information, to-wit:

"On or about the sixth day of January, A.D., 1976, A. Eugene Hoag, upon his oath, before the Honorable Richard Robinson, Eaton County Circuit Court Judge in the trial of the *People of the State of Michigan v Richard Morris,* No. 112-71C, on the charge of murder in the second degree, a capital crime, did falsely swear, in that he stated and answered 'No' to the following question asked him: 'Now did you make any mention, or mention or discuss questions of this blanket?', whereas in truth and in fact the said A. Eugene Hoag on or about the nineteenth day of December, 1975, did discuss with Paul Berger, in the presence of Larry

Hamilton, the origin of the blanket and the intended testimony of A. Eugene Hoag regarding said blanket, that said statements being made at the office of the Eaton County Prosecutor, located in the City of Charlotte, Eaton County, Michigan, that the foregoing false statement was made willfully and corruptly and that the false statement was material to the proceedings at which it was tendered. Contrary to P.A. 1931, No. 328, S 422 (MCL 750.422; MSA 28.664)."

On August 8, 1980, a *Walker*[2] hearing was held. Defendant challenged the admissibility of certain statements he made in chambers on January 9, 1976, after the mistrial in the second Morris trial. The trial court denied Hoag's motion to suppress.

Defendant's trial commenced on August 26, 1980. Prior to opening statements, the trial judge ruled that the prosecution was relieved of proving that defendant's alleged perjurious statement was material to an issue being tried in the second Morris case. The judge's ruling was based upon his interpretation of this Court's holding in *People v Hoag, supra.*

During the trial, the prosecution presented evidence that Paul Berger, the prosecutor in the Morris case, Larry Hamilton, an investigating officer in the Morris case, and defendant, the Eaton County Sheriff, had discussed an evidentiary problem, concerning a blanket, prior to the second Morris trial. While defendant was being cross-examined in the second Morris trial, he denied discussing the blanket with Berger prior to the Morris trial. The prosecution introduced defendant's statements made after the Morris mistrial in which he admitted that he was "being smart" with Morris's attorney. James and DeGraaf also testi-

[2] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

fied that defendant admitted giving misleading answers during the trial in an interview after the mistrial was declared.

Defendant attempted to introduce two exhibits consisting of testimony given by I. Goodman Cohen, Morris's attorney, and excerpts from Cohen's cross-examination of defendant during the Morris trial. After making a separate record, the trial court denied admission of the exhibits. Defendant also testified in his own behalf. According to Hoag, the blanket was not discussed at any meeting but isolated comments regarding it had been made. He also denied that he had ever used the word "misled" in his interview with James. Finally, he stated that he had never tried to intentionally mislead anyone. After closing arguments, defendant objected to the trial court's denial of Hoag's request to subpoena the presiding judge in the second Morris trial. The trial judge instructed the jury, which found defendant guilty of perjury. Defendant appeals his conviction raising four issues.

## I

On January 9, 1976, after the mistrial in the second Morris case, the trial judge in that case held an in-chambers conference with the prosecutor, Morris's attorney, and defendant. The prosecutor stated that some of the answers given by Hoag may have misled the jury. He stated that Hoag had discussed the blanket with him prior to trial and that Hoag's answers during the cross-examination could have misled the jury. He also stated that he confronted Hoag after the cross-examination and Hoag had stated that defense counsel was "being smart with him so he would be smart back". After the prosecutor's statement, the

trial judge, without warning Hoag of his *Miranda*[3]
rights, asked defendant if he wanted to say any-
thing concerning the prosecutor's statement. Hoag
stated:

> *"Mr. Hoag:* Yes. I think the question was, whether it
> was with Mr. Berger and an associate. I don't consider
> him an associate of Mr. Berger's. He was a witness in
> the case, not an associate.
> *"The Court:* Did you discuss the question of the
> blanket with Mr. Berger, just prior to this trial?
> *"Mr. Hoag:* We mentioned it down in the office, but I
> think, with Hamilton, and I discussed it."

The judge then allowed Morris's attorney to ask
two questions of defendant. When answering one
of the questions, Hoag admitted he discussed the
blanket with the prosecutor prior to trial.

The transcript of the in-chambers conference
was introduced into evidence during defendant's
perjury trial. According to Hoag, his statements
made during the conference were inadmissible
because he had not been given his *Miranda* warn-
ings.

In *Oregon v Mathiason,* 429 US 492; 97 S Ct 711;
50 L Ed 2d 714 (1977), the Supreme Court ad-
dressed the question of when a person must be
given the *Miranda* warnings. The Court stated:

> "Any interview of one suspected of a crime by a
> police officer will have coercive aspects of it, simply by
> virtue of the fact that the police officer is part of a law
> enforcement system which may ultimately cause the
> suspect to be charged with a crime. But police officers
> are not required to administer *Miranda* warnings to
> everyone whom they question. Nor is the requirement
> of warnings to be imposed simply because the question-

---

[3] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694
(1966).

ing takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.' It was *that* sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited." *Id.,* 495.

See *People v Ridley,* 396 Mich 603, 608; 242 NW2d 402 (1976), *People v Schram,* 98 Mich App 292, 307; 296 NW2d 840 (1980).

In this case, defendant was not "in custody". Defendant was asked to attend the meeting by the prosecutor and did so voluntarily. During the conference, there was no indication that defendant was prevented from leaving. Finally, no attempt was made to keep defendant at the conference. Since defendant was not in custody, the trial judge was not required to give him the *Miranda* warnings. Consequently, any statement made by him at the conference would be admissible under MRE 801(d)(2). *People v Moncure,* 94 Mich App 252, 257-261; 288 NW2d 675 (1979), *vacated on other grounds* 409 Mich 905 (1980).

## II

Defendant also alleges that the trial court erred when it took the issue of the materiality of defendant's perjured statement from the jury.

The elements of perjury are:

"First: Administration to the respondent of an oath authorized by law, by competent authority;
"Second: An issue or cause to which facts sworn to are material, and;
"Third: Wilful false statements or testimony by the respondent regarding such facts." *Hoag, supra,* 617-618.

We must examine whether the question of the statement's materiality is one for the judge or the jury.

Early Michigan cases establish that the issue of materiality is one for the trial court and not the jury. *People v McElheny,* 206 Mich 51, 59; 172 NW 546 (1919), *People v Almashy,* 229 Mich 227, 230-231; 200 NW 231 (1924). However, defendant argues that the Supreme Court changed this rule in *People v Kert,* 304 Mich 148; 7 NW2d 251 (1943). In that case, the trial court allowed the issue of materiality to go to the jury. The Supreme Court found no error because the record showed that the trial court thought the statement was material. *Id.,* 155. While the language cited by defendant might be interpreted as leaving the question of who decides whether the perjured statement is material unsettled, other language in *Kert* makes it clear that the issue is to be decided by the trial court. The Supreme Court stated:

"The trial judge permitted the introduction of testimony as heretofore outlined. He had to pass upon the materiality of questions when propounded." *Id.,* 154.

Under Michigan law, the trial court, not the jury, is responsible for deciding the issue of materiality.

The trial court found that Hoag's statement was material. In support of this position, he cited this Court's opinion in *People v Hoag, supra.* In that opinion, this Court discussed the materiality issue stating:

"We have concluded that the question and answer were material to an issue being tried in the Morris case. The origin of the blanket, whether it was found in Morris's car by the Michigan State Police or had been placed there by Hoag, was a crucial fact. If the blanket

could be tied to Morris or his car, it was a vital piece of evidence in the people's case. By his cross-examination, Morris's attorney was trying to prove that Hoag had placed the blanket in Morris's car and that he had discussed that fact with the prosecutor only a short time before the second trial. At the very least, the question was material to Hoag's credibility. Credibility is a sufficiently material issue to support a prosecution for perjury. See 60 Am Jur 2d, Perjury, § 11, p 973." *Id.,* 618-619.

Defendant argues that this finding was not a finding that defendant's statement was material but rather that the examining magistrate had probable cause to bind defendant over for trial.

We disagree. As we read the above quoted language, this Court found as a matter of law that defendant's statement was material. Morris's attorney was attempting to show that Hoag had placed the blanket in Morris's car. This would discredit a vital piece of evidence in the prosecution's case against Morris and made the question and answer material. Furthermore, the question was material because it attacked Hoag's credibility. Where a legal issue has been settled on one appeal, it may not be raised again in a subsequent appeal after proceedings held on remand to the lower court. *People v Prophet,* 101 Mich App 618, 625; 300 NW2d 652 (1980). Therefore, we decline to reverse defendant's conviction on this issue.

## III

Defendant's third allegation of error concerns possible communications between a prosecution witness and a juror. According to defendant, Larry Hamilton, a prosecution witness, communicated with Deborah Kay Berlin prior to the commencement of the second day of trial. The trial court

refused a request made by the prosecutor and defense counsel to have a separate record made concerning this contact. In support of this contention, defendant submits an *ex parte* affidavit.

*Ex parte* affidavits, filed for the first time in the appellate brief, may not serve to enlarge the record on appeal. *People v Nelson Johnson,* 58 Mich App 473, 478; 228 NW2d 429 (1975), *lv den* 394 Mich 784 (1975). Where there is a conversation between a juror and one of the parties or a witness, reversal is not required unless defendant can demonstrate that some prejudice occurred from the conversation. *People v Schram,* 378 Mich 145, 159; 142 NW2d 662 (1966).

In this case, defendant failed to object on the record and failed to move for a new trial pursuant to GCR 1963, 527.1(2). We will not consider his affidavit submitted for the first time on appeal. Furthermore, even if we were to accept defendant's *ex parte* affidavit, it fails to indicate any actual prejudice as a result of the contact between Berlin and Hamilton. This issue is meritless.

## IV

In addition to the errors already addressed, defendant raises three other issues which he claims denied him a fair trial. First, defendant argues that the trial court erred when it refused to admit into evidence the 55-page transcript of I. Goodman Cohen's testimony given during Hoag's obstruction of justice trial. Although Mr. Cohen was endorsed on the information, he died between trials. The transcript of his testimony given at the obstruction of justice trial was available, but the

trial court refused to admit the transcript because it was irrelevant.

Relevant evidence is defined as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. MRE 401. While all relevant evidence is admissible except where otherwise provided by the constitution or the Michigan Rules of Evidence, irrelevant evidence is not admissible. MRE 402. It is within the trial court's discretion to determine the relevancy of evidence and his decision will not be disturbed unless it is clearly erroneous and indicates an abuse of discretion. *People v Flores,* 92 Mich App 130, 134-135; 284 NW2d 510 (1979), *lv den* 407 Mich 932 (1979).

Defendant argues that Cohen's testimony was relevant because it demonstrated that he was "caught in some inconsistencies which we (the defense) feel might serve to explain the situation as far as Mr. Hoag's concerned". While Cohen might have given inconsistent testimony during defendant's obstruction of justice trial, the fact would not help prove or disprove the issue of whether defendant perjured himself during the second Morris trial. Therefore, Cohen's testimony was irrelevant and properly excluded.

Defendant also argues that the trial court erred when it refused to admit excerpts of Cohen's cross-examination of defendant during the Morris trial. According to defendant the excerpts were relevant because they demonstrated the type of personality Cohen possessed. Cohen's personality was not at issue in defendant's trial and would not have

explained why defendant perjured himself. The excerpts of the cross-examination were not relevant, and the trial court did not err when it refused to admit them.

Defendant's final allegation of error concerns the trial court's refusal to call Judge Richard Robinson, who was the trial judge during the second Morris trial. The trial court refused to call Robinson because it found his testimony to be cumulative and irrelevant. The trial court also found that Judge Robinson was not a res gestae witness.

The prosecutor has the duty to endorse and produce all res gestae witnesses. MCL 767.40; MSA 28.980. Persons present at the scene of a crime are presumed to be res gestae witnesses able to testify regarding their observations. *People v Brooks,* 96 Mich App 96, 98; 292 NW2d 139 (1980). The trial judge may excuse an endorsed witness if the witness's testimony would be merely cumulative. *People v Kaigler,* 81 Mich App 340, 344; 265 NW2d 324 (1978). A trial judge's decision to excuse production of a witness will not be reversed unless an abuse of discretion is shown. *Id.,* 344.

The trial court erred when it found that Judge Robinson was not a res gestae witness. Judge Robinson was the presiding judge at the trial at which Hoag made the allegedly false statement and was therefore a res gestae witness. However, reversal is not required because the trial court did not abuse its discretion by excusing the production of Judge Robinson. During Hoag's perjury trial, Paul Berger, the prosecutor in the second Morris trial, testified concerning defendant's perjury. Judge Robinson's testimony would have been cu-

mulative in light of Berger's testimony. Furthermore, Judge Robinson's testimony concerning the nature of the cross-examination of defendant would be irrelevant because it would not help prove or disprove a fact that was of consequence to the determination of the case.

Defendant has failed to raise an issue meriting reversal of his conviction. His conviction for perjury is affirmed.